UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-CV-00381-MOC

GWENDOLYN JONES,                    )
                                   )
                Plaintiff,          )
                                   )
        vs.                         )
                                   )            **ORDER**
ANDREW M. SAUL,                     )
**Commissioner of Social Security,** )
                                   )
                Defendant.          )
_____ )

THIS MATTER is before the Court on review of a final decision of the Commissioner of Social Security denying Plaintiff Gwendolyn Jones's application for disability insurance benefits and supplemental security income. Plaintiff filed a Motion for Summary Judgment, requesting remand for rehearing. See Doc. No. 15. The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. See Doc. No. 18. As set forth below, Plaintiff's motion is denied, the Commissioner's motion is granted, and this action is dismissed.

I.      BACKGROUND

        A.      Administrative Exhaustion

In January 2014, Plaintiff filed applications for disability insurance benefits under Title II, and supplemental security income under title XVI, of the Social Security Act (the "Act"), alleging she had been disabled since December 9, 2013. Tr. 193. Plaintiff's claims were denied initially and upon reconsideration, so she requested a hearing before an Administrative Law Judge ("ALJ"). Id. On January 30, 2017, Plaintiff amended her alleged onset date to December 29, 2014. Tr. 361. Also, on that day, the ALJ held a hearing, at which Plaintiff, her then-attorney, and an impartial vocational expert appeared. Tr. 193. On April 4, 2017, the ALJ

decided that Plaintiff was not disabled within the meaning of the Act. Tr. 206. Plaintiff appealed the decision to the Appeals Council, which remanded the case to the ALJ. Tr. 15. On remand, the ALJ again decided on November 8, 2018 that Plaintiff is not disabled within the meaning of the Act. Tr. 30. The Appeals Council denied Plaintiff's request for review on May 31, 2019, rendering the ALJ's decision final and reviewable by this Court. Tr. 1. Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

**B.      Sequential Evaluation Process**

The Act provides that "an individual shall be considered to be disabled . . . if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2.  An individual who does not have a "severe impairment" will not be found to be disabled;

3.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience,

must be considered to determine if other work can be performed. See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### C. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled from December 29, 2014, the alleged disability onset date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, at step one, the ALJ recognized that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. Next, at step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar radiculopathy, lumbar spondylosis, degenerative disc disease of cervical spine, fibromyalgia, obesity, degenerative joint disease of the shoulder bilaterally, migraines, diabetes mellitus, major depressive disorder, and adjustment disorder with a mix of anxiety and depression. Tr. 19. The ALJ also determined that Plaintiff suffered from two non-severe impairments: anemia and hypertension. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. Before turning to the next step, the ALJ found Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she was limited to: standing/walking up to six hours in an eight-hour day, sitting up to six hours in an eight-hour day, work that allows her to continually alternate from

sitting for 30 minutes to standing for 30 minutes throughout the workday, and work that does not involve unprotected heights.  Tr. 22.  She was also limited to: performing simple, routine tasks; maintaining concentration, persistence, and pace for 2-hour periods; and a stable work environment with few, infrequent changes to her routine.  Id.  Finally, the ALJ also found that Plaintiff could: frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolds, as well as reach overhead bilaterally.  Id.

In evaluating residual functional capacity, the ALJ discussed Plaintiff's testimony that she was "unable to work due to pain her shoulders, neck, and back."  Tr. 23.  While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, she nevertheless concluded that Plaintiff's claims about the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent" with the evidence in the record.  Id.  Ultimately, the ALJ incorporated the limitations regarding climbing ramps, stairs, balancing, stopping, crouching, and crawling "in order to reflect [the] limitations caused by [Plaintiff's] back impairment and fibromyalgia."  Tr. 26.  The ALJ also "accounted for [Plaintiff's] back pain and fibromyalgia with a sit/stand option."  Tr. 27.

Based on these findings and others, the ALJ concluded at step four that Plaintiff was unable to perform past relevant work as a certified nurse's assistant.  Tr. 28.  Still, at step five, the ALJ found that Plaintiff could perform various jobs that existed in significant numbers in the national economy, including: marker, router, and cafeteria attendant.  Tr. 28–29.  Because such jobs existed, the ALJ held that Plaintiff was not disabled within the meaning of the Act.  Tr. 29.

## II.    DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56.

Case 3:19-cv-00381-MOC   Document 22   Filed 08/28/20   Page 4 of 10

Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the

[administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

In this case, Plaintiff contends that the ALJ erred in assessing her residual functional capacity by failing to adequately explain her function-by-function analysis of Plaintiff's medical impairments. See Doc. No. 15-1 at 7. Specifically, Plaintiff asserts the ALJ (1) ignored Plaintiff's bilateral greater trochanter bursitis[1] by failing to reference that diagnosis by name and (2) did not explain how she evaluated Plaintiff's fibromyalgia. Id. at 7–12. Plaintiff alleges these failures frustrate judicial review, so remand is appropriate for reconsideration. The Court disagrees.

When assessing a claimant's residual functional capacity, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (1996). The "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at 34,478. "Only after [this assessment and discussion] may [a claimant's residual functional capacity] be expressed in terms of the exertion levels of work, sedentary, light, medium, heavy, and very heavy." Id. at 34,475; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015).

---

[1] "Trochanteric bursitis is inflammation (swelling) of the bursa (fluid-filled sac near a joint) at the outside (lateral) point of the hip known as the greater trochanter. When this bursa becomes irritated or inflamed, it causes pain in the hip. This is a common cause of hip pain." Cleveland Clinic, Trochanteric Bursitis (Oct. 15, 2018), https://my.clevelandclinic.org/health/diseases/4964-trochanteric-bursitis#:~:text=Trochanteric%20bursitis%20is%20inflammation%20(swelling,common%20cause%20of%20hip%20pain (last visited August 13, 2020).

To begin, while Plaintiff alleges she suffers bilateral greater trochanter bursitis, the record is far from clear that she obtained such a diagnosis. Plaintiff points to four separate medical notes, but none provide definitive support. First, Plaintiff was seen by Dr. Thomas Heil on August 7, 2013 for "lumbar epidural steroid injection in her low back and upper body trigger injections for the separate myofascial problem in a separate body part." Tr. 609. In his visit notes, Dr. Heil opined that Plaintiff had "some tenderness over her bursas bilaterally as well [as] in the hips and it <u>may be</u> that [she has] a third problem, which is greater trochanter bursitis." <u>Id.</u> (emphasis added). Two weeks later, after a follow-up appointment, Dr. Heil wrote that Plaintiff's "exam continues to show a lot of bursitis <u>signs</u> bilaterally in the hip." Tr. 601 (emphasis added). But on September 4, 2013, after noting in passing that Plaintiff "suffers from multiple pain generators including bilateral greater trochanter bursitis [and other disorders]," Dr. Heil ultimately concluded her "hips [were] still a little tender, but substantially less than before." Tr. 598. Of course, these three visits occurred prior to the disability onset date on December 29, 2014. Only Plaintiff's final medical evaluation occurred after the alleged disability onset date— a November 13, 2015 visit with Dr. Jon-David Hoppenfeld. Tr. 660. Dr. Hoppenfeld simply noted Plaintiff was "exquisitely tender over the . . . greater trochanteric bursa." Tr. 660. Notably, none of these statements provide a clear affirmative diagnosis of bilateral greater trochanter bursitis, much less opine that functional limitations should be adopted as a result. <u>See Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009) (recognizing the ALJ does not err by failing to incorporate a medical observation into a claimant's residual functional capacity when that observation "is neither a diagnosis nor statement of [a claimant]'s functional capacity").

7

Even assuming these notes are sufficient to establish an affirmative diagnosis, Plaintiff's alleged limitations from bilateral greater trochanter bursitis were nevertheless considered by the ALJ in crafting her residual functional capacity. During the hearing, Plaintiff testified that she experienced pain in her "lower back" every day, which "goes does to [her] hip and goes down [her] leg, shoots down [her] leg with numbness, tingling" in "both legs." Tr. 84. According to her, that pain is exacerbated by "sitting a long period of time [and] standing a long period of time." Id.; see Tr. 52. The ALJ acknowledged these complaints of "back pain and hip pain" and thus limited her to jobs where she could "alternate between sitting for 30 minutes, then standing for 30 minutes . . . throughout the workday." Tr. 22–24. Plaintiff failed to identify any additional limitations that are supported by the record. See Doc. No. 15-1 at 9. Thus, assuming Plaintiff had a legitimate diagnosis of bilateral greater trochanter bursitis, the ALJ considered all supported limitations. See Monica S. v. Berryhill, No. 17-CV-442, 2018 WL 3493084, at *2 (N.D. Okla. July 20, 2018) (holding an ALJ did not err by failing to explicitly note a "doctor's suggestion that [a claimant's] pain was caused by trochanteric bursitis," as the ALJ identified the claimant's "medically determinable impairment of a history of hip pain" and "[t]he specific diagnosis is not of significance because the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis"); see also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (explaining that a "mere diagnosis . . . says nothing about the severity of the condition" or the "severity of [a claimant's] impairments"); Horton v. Comm'r, Soc. Sec. Admin., No. 12-CV-1940, 2013 WL 1953328, at *2 (D. Md. May 9, 2013) ("[A]n RFC is properly expressed in terms of abilities and limitations, not diagnoses"); cf. Knox v. Astrue, 327 F. App'x 652, 657–58 (7th Cir. 2009) ("The ALJ need not provide a written evaluation of

every piece of evidence, but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions.").

Next, Plaintiff opaquely complains that the ALJ's discussion of her fibromyalgia was "inaccurate" and did not explain "how the ALJ evaluated [her fibromyalgia] or how [her fibromyalgia] affected her [residual functional capacity]." Doc. No. 15-1 at 7, 12. In rendering her decision, the ALJ found that Plaintiff's fibromyalgia was a "severe impairment." Tr. 19. She recounted Plaintiff's testimony that, as a result of fibromyalgia, "she experiences pain throughout her whole body and she has stabbing pains in her legs, backs and arms." Tr. 23. Considering that evidence, the ALJ limited Plaintiff to light work, specifically finding that Plaintiff could only "frequently climb ramps, stairs, balance and stoop, kneel, crouch, and crawl in order to reflect her limitations caused by her back impairment and fibromyalgia." Tr. 26. The ALJ also "accounted for [Plaintiff's] back pain and fibromyalgia with a sit/stand option." Tr. 27. Plaintiff's conclusory complaint fails to reference this discussion, which plainly show how the ALJ incorporated fibromyalgia into the residual functional capacity. Plaintiff also failed to identify a single "inaccuracy" in this analysis—whether in the record or decision—and the Court has found none.

More specifically, Plaintiff also alleges that the ALJ's fibromyalgia discussion was insufficient because it failed "to mention [Social Security Ruling] 12-2p or its criteria for evaluating [fibromyalgia] in her decision." But courts do not require the ALJ to explicitly cite Social Security Ruling 12-2p; rather, they ensure the ALJ "applied the Ruling's principles." Luukkonen v. Comm'r of Soc. Sec., 653 F. App'x 393, 399 (6th Cir. 2016) (citing McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 834 (6th Cir. 2006)). Relevant here, Ruling 12-2p explains how the Social Security Administration: (1) develops evidence to establish whether a

claimant has a medically determinable impairment of fibromyalgia, and (2) evaluates fibromyalgia claims. See SSR 12-2p, 77 Fed. Reg. 43,640 (2012). Plaintiff does not explain how the ALJ contravened either aspect of the Ruling. And while Plaintiff extensively discusses the framework that the Ruling provides to evaluate whether a claimant has a medically determinable impairment, see Doc. No. 15-1 at 10, this discussion appears neither here nor there, as the ALJ did find that Plaintiff's fibromyalgia was a medically determinable and severe impairment, see Tr. 19. Again, Plaintiff has not identified a concrete error, and the Court has found none. Accord Luukkonen, 653 F. App'x at 399; see Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019); Cantrell v. Colvin, No. 1:14-CV-104, 2015 WL 7444633, at *4 (W.D.N.C. Nov. 23, 2015).

To summarize, contrary to Plaintiff's protestations otherwise, the ALJ's decision in this case was sufficiently clear to enable the Court to understand her reasoning and meaningfully review it. See Alaska Dep't of Envtl. Conservation v. E.P.A., 540 U.S. 461, 497 (2004) (noting "a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" (citation omitted)). Plaintiff's generalized contentions of error present no basis for remand. Accordingly, the ALJ's finding of non-disability is affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that: Plaintiff's Motion for Summary Judgment, Doc. No. 15, is **DENIED**; Defendant's Motion for Summary Judgment, Doc. No. 18, is **GRANTED**. The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**, and this action is **DISMISSED**.

Signed: August 27, 2020

Max O. Cogburn Jr.